### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| TAMMY D. BRENNAN, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | *Docket No. 05-123-P-H* |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| *Defendant* | ) | |

### RECOMMENDED DECISION ON
### PLAINTIFF'S MOTIONS FOR REMAND

The plaintiff in this Social Security Disability ("SSD") appeal has filed three separate motions for remand, all of which the commissioner opposes. *See* Motion for a Sentence Six Remand ("Sentence Six Motion") (Docket No. 6); Motion for Remand for Appeals Council Errors of Law ("Appeals Council Motion") (Docket No. 9); Motion for Remand for Consolidation of Two Applications ("Consolidation Motion") (Docket No. 10); Defendant's Response to Plaintiff's Motions for Remand Pursuant to Sentence Six of 42 U.S.C. §405(g) and To Augment the Record ("Sentence Six Opposition") (Docket No. 11); Defendant's Response to Plaintiff's Motion for Remand for Consolidation of Two Applications (Docket No. 20).[1] I recommend that the court grant the Appeals Council Motion. As the parties have agreed, *see* Report of Conference at 2, the granting of any one of the three pending motions moots the remaining two. As counsel for the commissioner further pointed out, the granting of any one of the three also has the effect of removing the case from the court's March

---

[1] During a conference with counsel held on January 12, 2006, counsel for the commissioner clarified that the commissioner's response to the Sentence Six Motion should be treated as a response to the Appeals Council Motion as well. *See* Report of Conference of
*(continued on next page)*

2, 2006 oral-argument calendar, *see id*., obviating the need to consider the points raised in the

plaintiff's statement of errors, *see* Statement of Errors (Docket No. 8).

In *Mills v. Apfel*, 244 F.3d 1 (1st Cir. 2001), the First Circuit held that in certain circumstances

a district court is empowered to remand a case based on Appeals Council error in refusing to review

an administrative law judge's decision:

> It is quite true that an Appeals Council decision refusing review has all the
> hallmarks of a discretionary decision: the Appeals Council need not and often does not
> give reasons, and the regulations appear to provide the Appeals Council with a great
> deal of latitude in deciding which cases should be reviewed.  But since *Service v.
> Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957), it has been well
> established that a discretionary decision may be reviewable to the extent that it rests
> on an explicit mistake of law or other egregious error.  The denial of judicial review
> in such an instance is very much the exception.
>
> The impulse to preserve some role for the courts, where the administrative
> decision rests on an articulated but severely mistaken view, is borne out by the cases.
> Two of the leading circuit decisions on the social security scheme – *opposed* to each
> other on the question whether the ALJ should be reviewed based on new evidence –
> assume that an Appeals Council denial of review is itself reviewable to some degree
> and in some limited circumstances.  We join these circuits in holding that an Appeals
> Council refusal to review the ALJ may be reviewable where it gives an egregiously
> mistaken ground for this action.

*Mills*, 244 F.3d at 5 (citations and footnote omitted) (emphasis in original).

I am persuaded that in this case the Appeals Council provided an "egregiously mistaken

ground" for its action.  The plaintiff opted to proceed at the hearing before the administrative law

judge without benefit of counsel, *see* Record at 360-61; however, prior to issuance of the

administrative law judge's adverse decision on March 26, 2004, *see id*. at 23, she obtained the

services of her current counsel, who requested postponement of the decision until the plaintiff could

develop the record further, *see, e.g., id*. at 19, 55.  The administrative law judge rebuffed that request.

*See id*. at 19.  In due course, in conjunction with her request for Appeals Council review, the plaintiff

---

Counsel and Order ("Report of Conference") (Docket No. 19).

submitted a number of new materials, *see id*. at 3A-3B, including a report by podiatrist Alan S.

Goldenhar, D.P.M., dated May 27, 2004, *see id*. at 237-39, a letter from Dr. Goldenhar dated July 2,

2004, *see id*. at 236, a report by psychiatrist John L. Newcomb, M.D., dated February 14, 2005, *see*

*id*. at 277-79, and a letter from treating physician Franklin R. Hubbell, D.O., dated May 12, 2005, *see*

*id*. at 357.

> In denying review, the Appeals Council stated, in relevant part:
>
> In looking at your case, we considered the reasons you disagree with the decision and
> the additional evidence listed on the enclosed Order of Appeals Council.
>
> We found that this information does not provide a basis for changing the
> Administrative Law Judge's decision.
>
> We also looked at the additional evidence provided by your representative listed on
> the attached Order of Appeals Council. The Administrative Law Judge decided your
> case through March 26, 2004. This new information is about a later time. Therefore,
> it does not affect the decision about whether you were disabled on or before the date
> of the hearing decision.

*Id*. at 5. In stating that all of the new information was "about a later time[,]" the Appeals Council was

egregiously mistaken. While the information did indeed postdate issuance of the administrative law

judge's decision, some if it, including the Goldenhar report and letter, the Newcomb report and the

Hubbell letter, pointedly touched upon the plaintiff's condition from 2001 onward. *See id*. at 236-39,

277-79, 357. Inasmuch as appears, the Appeals Council did not realize – as a simple factual matter –

that these reports contained retrospective elements. If that is the case, the Appeals Council failed to

afford the plaintiff a minimally meaningful and rational review.

> It is also possible that the Appeals Council was aware of the retrospective nature of some of

the reports but nonetheless concluded, as a matter of law, that they provided no basis for changing the

administrative law judge's decision. If so, that assessment, too, was wrong (in my view, egregiously

so).

The administrative law judge found, *inter alia*, that the plaintiff suffered from two severe impairments, obesity and diabetic neuropathy. *See* Finding 3, *id*. at 22. He further noted, in relevant part: "Ms. Brennan has also occasionally complained of insomnia and depression, but the evidence does not show that either of these is an ongoing problem resulting in chronic functional difficulties." *Id*. at 20. This finding was corroborated by the record as it stood at the time of decision. *See, e.g., id*. at 134-47 (Psychiatric Review Technique Form ("PRTF") completed December 9, 2002 by non-examining Disability Determination Services ("DDS") consultant Thomas A. Knox, Ph.D., finding non-severe affective disorder), 148-61 (PRTF completed May 2, 2003 by non-examining DDS consultant David R. Houston, Ph.D., finding non-severe affective disorder), 171 (progress note of September 9, 2002 indicating plaintiff declined treatment for depression, stating "'it is just this time [of] yr'"), 185 (progress note of March 12, 2002 stating plaintiff requested refill of Ambien, "which she takes rarely for insomnia 'if I haven'[t] been able to sleep for 4 nights or more'"), 373 (testimony of plaintiff at hearing that "I don't have depression.").

By contrast, the new materials tend to show that the plaintiff's mental impairments were significantly worse than appreciated (in fact, in Dr. Newcomb's opinion, so bad as to have been disabling since 2001) and that they went untreated and largely unrecognized because she had a tendency to deny them. *See, e.g., id*. at 251, 273, 279. The new materials also tend to bolster the validity of the plaintiff's complaints of severe foot pain emanating from diabetic neuropathy for the period prior to the date of decision. *See id*. at 236-39. While it is not a foregone conclusion that, upon full consideration of the mix of old and new information, the plaintiff would be found disabled, there can be no serious doubt that the new information provides, in the words of the Appeals Council, "a basis for changing the Administrative Law Judge's Decision." *Id*. at 5; *see also, e.g., Bosmond v. Apfel,* No. 97 Civ. 4109(RPP), 1998 WL 851508, at *12 (S.D.N.Y. Dec. 8, 1998) ("A post-

4

determination diagnosis that indicates true disability prior to the ALJ determination is relevant – whether the diagnosis relates to a previously unrecognized condition or whether it reveals the depth of an illness recognized, but not fully appreciated at the time of the hearing.") (citations omitted).[2]

Remand accordingly is warranted. In this case, the locus of error is the Appeals Council; however, the plaintiff seeks remand with instructions, *inter alia*, for a rehearing before an administrative law judge. *See* proposed Order of Remand for Appeals Council Errors of Law ("Proposed Order"), attached to Appeals Council Motion. Counsel for the commissioner raised no objection to the unfolding of such a scenario in the event the plaintiff prevailed on this particular theory. *See* Sentence Six Opposition. In any event, no useful purpose would be served in remanding with instructions that the Appeals Council reconsider its decision to deny review – a decision that I have already concluded rested on egregiously mistaken premises. The plaintiff therefore is entitled to reconsideration of the merits of her case. Such reconsideration necessitates a rehearing, preferably with a medical expert and psychiatric/psychological expert present.[3]

The plaintiff makes several more demands in the event of a remand, to wit, for: (i) remand with instructions to assign this case to a different administrative law judge, (ii) inclusion in the Record "of the old and new evidence in the transcript of this Court," and (iii) provision by the commissioner of the consultative examinations sought by a DDS examiner, Dr. Klein, or allowance to the plaintiff and

---

[2] I am mindful that the First Circuit has cautioned that Appeals Council assessments are owed "great deference," although "they are ordinarily not beyond review in extreme cases." *Mills*, 244 F.3d at 6. In *Mills*, the First Circuit held that the Appeals Council had not erred in deeming new evidence diagnosing panic attacks consistent with other evidence of record in circumstances in which panic attacks previously had been alleged (but not diagnosed) and the new evidence shed no light on the severity of the attacks. *See id*. at 6-7. In this case, by contrast, three practitioners (Drs. Newcomb, Goldenhar and Hubbell), at least one of whom (Dr. Hubbell) qualifies as a treating physician, *see* Record at 357, have opined that the plaintiff was disabled beginning in 2001 by either peripheral neuropathy, mental impairment or a combination of those and other conditions, *see id*. at 236, 279, 357. The retrospective opinion of a treating source, in particular, may be entitled to significant weight. *See, e.g., May v. Social Sec. Admin. Comm'r*, No. 97-1367, 1997 WL 616190, at *1 (1st Cir. Oct. 7, 1997); *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996).

[3] In lieu of or in addition to inviting expert consultants to the hearing, the commissioner could choose to seek written expert-consultant reports regarding the plaintiff's functional capacity as of the relevant time period in view of the totality of the evidence.

her counsel of "ample time and opportunity" to raise the money for and arrange for those tests.  *See* Proposed Order.  I consider each in turn.

      1.    <u>Reassignment to New Administrative Law Judge</u>.  The plaintiff seeks reassignment of her case on remand to a different administrative law judge on the basis that that the individual who decided her case on the first go-round was biased.  *See* Statement of Errors at 13-16, 23.  She asserts, *inter alia*, that this administrative law judge badgered her, eventually reducing her to tears at hearing.  *See id*. at 13-16.  I conclude that it would be appropriate to suggest, but not to direct, such reassignment.

"As a general matter, courts have held that whether a case is remanded to a different ALJ is a decision for the Commissioner to make." *Sutherland v. Barnhart*, 322 F. Supp.2d 282, 292 (E.D.N.Y. 2004) (citation and internal quotation marks omitted).  However, in circumstances in which "the conduct of an ALJ gives rise to serious concerns about the fundamental fairness of the disability review process, remand to a new ALJ is appropriate." *Id*.  A plaintiff bears the burden of overcoming the presumption  that his or her case was decided by an honest and impartial adjudicator.  *See, e.g., Brasslett v. Cota*,  761 F.2d 827, 837 (1st Cir. 1985) ("[A] plaintiff alleging impartiality must overcome the  presumption that administrators are men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances, and must demonstrate an actual risk of bias or prejudgment.") (citation and internal quotation marks omitted).

For purposes of argument, I accept at face value the plaintiff's claim that she cried at hearing. However, a careful review of the record as a whole, including the hearing transcript, persuades me that although the administrative law judge was blunt, brusque and even downright rude, *see, e.g*., Record at 395 ("So you guys aren't trying hard enough [to quit smoking].  You're asking to be put on the dole for disability for the rest of your life because of a neuropathy that's controllable by stopping

smoking?"), he was not biased. The subject matter about which he pointedly questioned the plaintiff was fair game, including when she stopped working, when she alleged onset of disability, whether her activities conflicted with her allegations, whether she was following doctors' orders, and if not, why not. *See* Statement of Errors at 13-16 (setting forth assertedly objectionable passages of hearing transcript); *see also, e.g., Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("Expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women sometimes display do not establish bias.") (citation and internal punctuation omitted). The plaintiff further complains that the administrative law judge promised to obtain and "go with" her treating physician's opinion but then broke that promise, rejecting that physician's opinion. *See* Statement of Errors at 15. It was inappropriate, in the first instance, for the administrative law judge to have indicated that he would accept a treating physician's opinion sight unseen. The fact that he rejected the opinion upon actually considering it does not demonstrate bias against the plaintiff.[4]

The plaintiff having fallen short of demonstrating bias, a directive that the commissioner remand to a new administrative law judge is inappropriate. That said, the conduct of the administrative law judge in this case justifies a recommendation that the commissioner exercise her discretion to assign this case to a new individual. *See, e.g., Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996) ("[W]e do not think that that point [sufficient evidence of bias] was reached here, and we therefore do not order, but merely recommend, that the case be transferred [to a new administrative law judge].") . While the administrative law judge was not demonstrably biased, he was needlessly brusque and rude. The plaintiff's feelings of discomfort with him, which are understandable, should be respected.

---

[4] This case is readily distinguishable from *Pastrana v. Chater*, 917 F. Supp. 103 (D.P.R. 1996), upon which the plaintiff relies, *see* Statement of Errors at 15-16. In *Pastrana*, the administrative law judge had expressed (i) resentment toward a remand order and unwillingness to apply the appropriate legal standard, (ii) bias against Pastrana's treating psychiatrist and (iii) bias against disability

*(continued on next page)*

2.      <u>Supplementation of Record</u>.  The plaintiff requests, *inter alia*, that the court grant the relief of directing inclusion in the record "of the old and new evidence in the transcript of this Court[.]"  Proposed Order.  It is not clear what this means; however, the plaintiff elsewhere has identified the following as missing from the record: (i) letters counsel sent to the administrative law judge, and (ii) a PRTF and mental residual functional capacity form completed by Dr. Newcomb.  *See* Statement of Errors at 21-22.  She also has sought to have the hearing tape itself made part of the record.  *See* Sentence Six Motion at 2.  I have already granted a separate motion to augment the record to add the missing Newcomb materials.  *See* Report of Conference at 1; Docket No. 17.  I agree that the missing letters should be made part of the official record, as well.[5]  The plaintiff seeks inclusion of the hearing tape in the record to demonstrate, incident to her bias argument, that she cried during her hearing.  *See* Sentence Six Motion at 2.  However, I have accepted that representation at face value.  I discern no need to make the hearing tape itself part of the official record.[6]

3.      <u>Further Development</u>.  Inasmuch as appears, DDS consultant Stephen Klein, M.D., performed an evaluation of the plaintiff for purposes of a later filed application.  *See* Record at 249-55.  In his report, which postdated the issuance of the adverse decision in this case by approximately four months, he noted that an "EMG would be helpful in confirming the severity of this [peripheral neuropathy] condition" and that "[p]lain films at the very least would be helpful in assessing the degree of degenerative changes if any in the lumbar spine."  *Id*. at 252.  The plaintiff now wants the suggested EMG and x-rays ordered in connection with the instant case.  *See* Proposed Order. Nonetheless, she neglects to shed light on how the requested diagnostic tests, if performed today,

---

applicants from Puerto Rico, as a general class.  *See Pastrana*, 917 F. Supp. at 107.
[5] These consist of a total of seven pages appended as Exhibit A to the Sentence Six Motion, comprising a letter dated February 24, 2004 from Remington O. Schmidt to the Hon. James S. Russell, a telefax letter dated February 24, 2004 from Remington O. Schmidt to Larry Bothello, a telefax cover sheet dated January 20, 2004 from Remington O. Schmidt to Mike Stull, and a letter dated January 17, 2004 from Remington O. Schmidt to the Hon. James S. Russell.  *See* Exh. A to Sentence Six Motion.

would illuminate the status of her condition during the relevant period (from alleged onset of disability in 2001 through the adverse decision on March 26, 2004). While it is possible that they might, I am unwilling simply to assume that they would. In the circumstances, I recommend that the court decline to issue this directive. The commissioner, of course, would remain free to exercise her discretion to order such testing (and otherwise to develop the record and/or accept additional supplementation from the plaintiff as she sees fit). To the extent that such test results have already been obtained, the commissioner should be encouraged to include them in the record.

For the foregoing reasons, I recommend that the Appeals Council Motion be **GRANTED** and that the case be **REMANDED** for further proceedings not inconsistent herewith. Acceptance of this recommended decision would moot the pending Sentence Six Motion and Consolidation Motion and obviate the need for further consideration of the Statement of Errors.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 25th day of February, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

---

[6] For future reference, I note that to the extent plaintiff's counsel identifies materials that are assertedly missing from the record, he should include them all in a unified motion to supplement the record.